IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARIF SMITH<br>5115 Race Street<br>Philadelphia, PA 19139<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>PRESTIGE DELIVERY SYSTEMS, INC.<br>32 Runway Road<br>Levittown, PA 19057<br><br>　　　　　　Defendant. | CIVIL ACTION NO.:<br><br>**CIVIL ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff Sharif Smith (hereinafter "Plaintiff"), by and through undersigned counsel, hereby complains as follows against Defendant Prestige Delivery Systems, Inc. (hereinafter "Defendant").

## INTRODUCTION

1.　　Plaintiff initiates this action to redress violations by Defendant of 42 U.S.C. § 1981 (hereinafter "Section 1981"). Defendant subjected Plaintiff to discrimination and a hostile work environment on the basis of his race (African American). Defendant fired Plaintiff in retaliation for his complaints about same.

## JURISDICTION AND VENUE

2.　　This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, 42 U.S.C. § 1981, *et seq*.

3.　　This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5. The foregoing paragraphs are incorporated herein as if set forth in full.

6. Plaintiff is an adult individual with an address as set forth in the caption.

7. Defendant is a business entity with a place of business at the address set forth in the caption.

8. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein as if set forth in full.

10. Defendant hired Plaintiff in or around late August or early September 2013 in Levittown, Pennsylvania.

11. Plaintiff is an African American male.

12. At all times relevant herein, Supervisor Sean (last name unknown) was a manager for Defendant.

13. Supervisor Sean is a Caucasian male.

14. Throughout the course of Plaintiff's employment with Defendant, Plaintiff reported directly to Supervisor Sean.

15. At all times relevant herein, General Manager David Munez (hereinafter "General Manager David") was a general manager for Defendant.

16. General Manager David is a Hispanic male.

17. At all times relevant herein, Supervisor Sean reported directly to General Manager David.

18. At all times relevant herein, Department Head Mach (last name unknown) was a department head for Defendant and had authority over Plaintiff.

19. Department Head Mach is a Hispanic male.

20. At all times relevant herein, Coworker Joaquin (last name unknown) was a coworker of Plaintiff, employed by Defendant.

21. Coworker Joaquin is a Hispanic male.

22. Plaintiff was the only African American employed by Defendant at the address set forth in the caption.

23. Department Head Mach subjected Plaintiff to a racially hostile work environment. By way of example:

   a. Department Head Mach openly used the term "**nigger**" when referring to African Americans.

   b. Department Head Mach would make stereotypical and discriminatory statements such as "*black people love grape soda and cheese doodles*."

24. General Manager David also openly and regularly used the term "**nigger**" when referring to African Americans.

25. In late July or early August 2014, Coworker Joaquin began to refer to Plaintiff as "*the black dude*."

26. Plaintiff politely and respectfully asked Coworker Joaquin to refer to Plaintiff by his name rather than "*the black dude*."

27. Coworker Joaquin ignored Plaintiff's request and continue to refer to Plaintiff as "*the black dude*."

28. Soon thereafter, Department Head Mach also began to refer to Plaintiff as "*the black dude*."

29. Plaintiff complained to Supervisor Sean on numerous occasions about the racially hostile work environment to which he was subjected.

30. Supervisor Sean apologized to Plaintiff for the racially hostile work environment that Plaintiff was subjected to.

31. Supervisor Sean did not take any steps to stop the racial harassment from continuing.

32. The racial harassment described above continued.

33. On or about September 5, 2014, Plaintiff again politely and respectfully asked Coworker Joaquin to cease his use of referring to Plaintiff as "*the black dude*," and instead to refer to Plaintiff by his name.

34. In response to Plaintiff's request, Coworker Joaquin attempted to instigate a physical altercation with Plaintiff.

35. Plaintiff refused to participate in any physical altercation with Coworker Joaquin.

36. Thereafter, Plaintiff continued to reject Coworker Joaquin's attempts to instigate a physical altercation.

37. Nonetheless, upon witnessing Coworker Joaquin's attempt to instigate a physical altercation with Plaintiff, General Manager David sent Plaintiff home for the remainder of the day.

38. General Manager David did not discipline Coworker Joaquin for his attempts to instigate a physical altercation with Plaintiff.

39. Plaintiff asked General Manager David if he was being fired.

40. In response to Plaintiff's question, General Manager David instructed Plaintiff to call him on September 8, 2014.

41. On the morning of September 8, 2014, Plaintiff called General Manager David, as instructed.

42. General Manager David initially answered Plaintiff's phone call and instructed Plaintiff to call him back later that day.

43. As instructed, Plaintiff called General Manager David later that day.

44. General Manager David did not answer or return Plaintiff's phone call.

45. Plaintiff attempted subsequent phone calls to General Manager David on September 8, 2014.

46. General Manager David did not answer or return Plaintiff's subsequent phone calls.

47. Defendant never permitted Plaintiff to return to work, effectively firing him.

48. Defendant has not provided any reason for firing Plaintiff.

49. In fact, Defendant fired Plaintiff in retaliation for his complaints about being subjected to a racially hostile work environment.

## COUNT I
## Violations of 42 U.S.C. § 1981
### (Racial Discrimination/Harassment)

50. The foregoing paragraphs are incorporated herein as if set forth in full.

51. Plaintiff was subjected to severe and pervasive racial harassment by Defendant which was both offensive and unwelcome.

52. Any reasonable person would have felt that he or she was being subjected to racial harassment due to the use of the highly offensive racial slurs by management and coworkers.

53. Defendant's actions as set forth above constitute violations of 42 U.S.C. § 1981.

54. Plaintiff has suffered harm as a result of Defendant's actions.

## COUNT II
## Violations of 42 U.S.C. § 1981
### (Retaliation)

55. The foregoing paragraphs are incorporated herein as if set forth in full.

56. Defendant fired Plaintiff for complaining about racial harassment.

57. Defendant's actions as set forth constitute violations of 42 U.S.C. § 1981.

58.	Plaintiff has suffered harm as a result of Defendant's actions.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.	Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff or anyone else on any basis forbidden by 42 U.S.C. § 1981.

B.	Defendant is to promulgate and adhere to a policy prohibiting racial harassment and discrimination;

C.	Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back and front pay;

D.	Plaintiff is to be awarded actual damages, as well as damages for the emotional distress, pain, suffering, and humiliation caused by Defendant's actions;

E.	Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

F.	Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

G.	Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable law; and

H.	Plaintiff is permitted to have a trial by jury.

>	Respectfully submitted,
>
>	**SWARTZ SWIDLER, LLC**
>
>	*s/ Richard S. Swartz*
>	RICHARD S. SWARTZ, ESQ.
>	DANIEL A. HOROWITZ, ESQ.
>	1101 Kings Hwy N, Ste. 402

Cherry Hill, NJ 08034<br>
(856) 685-7420<br>
(856) 685-7417 Fax

Dated: December 2, 2014

### **DEMAND TO PRESERVE EVIDENCE**

1. All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.